# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-2116

KATHERINE BLICKENSTAFF,

*Plaintiff-Appellant,*

v.

R.R. DONNELLEY & SONS CO.
SHORT TERM DISABILITY PLAN,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 00-C-983—**Sarah Evans Barker**, *Judge.*

———————

ARGUED MAY 18, 2004—DECIDED AUGUST 9, 2004

———————

Before FLAUM, *Chief Judge*, and KANNE and ROVNER,
*Circuit Judges.*

KANNE, *Circuit Judge.* Katherine Blickenstaff primarily
appeals from the district court's determination that R.R.
Donnelley & Sons Co. Short Term Disability Plan ("Plan")
did not act arbitrarily and capriciously in terminating her
short term disability benefits and then refusing to reinstate
them on appeal. She also claims that the district court erred
in limiting the evidence at trial and appeals the district
court's decision to sanction her attorneys under Federal
Rule of Civil Procedure 11. For the reasons we discuss

below, we affirm the district court's treatment of trial evidence and its decision on the merits, but vacate, in part, the sanctions award.

## I.  History

## A.  Short Term Disability Claim Denial

R.R. Donnelley & Sons Co. employed Blickenstaff as a material handler. Beginning October 1, 1998, Blickenstaff was covered by the employee benefit plan at issue here, which provided benefits for short term disability. The short term disability portion of the Plan was self-funded by Donnelley, which served as the Plan administrator. A subsidiary of Hartford Life & Accident Insurance Co. served as the claims evaluator, and, under the terms of the Plan, "ha[d] full discretion and authority to determine benefits payable and to construe and interpret all terms and provisions of the Plan in connection with this determination."

Blickenstaff, under a prior benefits plan, received short term disability benefits from April 30, 1998 to June 1, 1998 because of lower back pain. She returned to work on June 1, 1998, with the following restrictions: no lifting more than ten pounds and no prolonged standing (more than two hours), bending, stooping, crawling, or climbing. Donnelley accommodated her restrictions and ultimately considered them, and her accommodated job, to be permanent.

Despite Donnelley's accommodation, Blickenstaff alleges that she continued to experience pain while working. She stopped work in October of 1998 and again applied for short term disability benefits. Under the Plan, she was entitled to receive short term disability benefits for twenty-six weeks if she met the definition of "total disability" throughout the benefits period:

> Total Disability or Totally Disabled means that you are prevented by:

1) accidental bodily injury;

2) sickness;

3) Mental Illness;

4) Substance Abuse; or

5) Pregnancy,

from performing the essential duties of *your occupation*, or a reasonable alternative offered to you by the Employer, and as a result, you are earning less than 20% of your predisability Weekly Earnings. [Emphasis added].

The Plan initially approved the short term disability benefits, but terminated them in a letter dated March 18, 1999, nineteen weeks into the benefits period. It based its decision on new medical evidence, in the form of a functional capacity evaluation, which indicated Blickenstaff could perform her job as accommodated by Donnelley. Blickenstaff utilized the Plan's internal appeals process. When it refused to reinstate her benefits, she sued in state court, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*[1] The case was properly removed to federal district court.

After denying, in part, the Plan's motion for summary judgment, see *Blickenstaff v. R.R. Donnelley & Sons Co.*

---

[1] Hartford, as claims evaluator, collected Blickenstaff's medical information, communicated with her doctors, made all determinations with regard to Blickenstaff's benefits eligibility, and communicated these decisions to Blickenstaff, all on behalf of the Plan. Hartford, though, is not a proper party to this action; as we discuss later, only the Plan is. To avoid confusion, although the majority of the actions described in this opinion were undertaken by Hartford, because it was acting as the Plan's agent, we attribute Hartford's decision-making process to the Plan and refer only to the Plan in our recitation of facts.

*Short-Term Disability Plan*, No. 00-C-983-B/S, 2001 U.S. Dist. LEXIS 22895 (S.D. Ind. Dec. 5, 2001), Judge Barker held a bench trial on March 18, 2002. The sole issue presented was whether the Plan's March 1999 termination of benefits was arbitrary and capricious. The court had previously found, in its summary judgment ruling, that the Plan did not act arbitrarily and capriciously in denying Blickenstaff second internal appeal following the initial decision to terminate her benefits.[2]

At trial, Blickenstaff argued, based on one word contained in the March 18, 1999 letter terminating her benefits, that the Plan utilized the wrong standard in evaluating her claim. The letter stated on page three that "[t]he Plan provides that Hartford would pay benefits if you were prevented by Disability from doing the essential duties of *any* occupation on a full time basis." [Emphasis added]. Blickenstaff rightly pointed out that the definition of disability appearing in the Plan documents defines "total disability" for short term disability purposes as being prevented from performing the essential duties of "your" occupation, not "any" occupation as appeared in the letter. Yet, the letter accurately quoted the definition of "total disability" on its first page, and goes on to state, in the sentences immediately following the one containing the phrase "any occupation:"

> [Y]ou are capable of performing the essential duties of *your* occupation as a Material Handler as defined by your employer on January 25, 1999. Therefore, we find that the medical documentation in your file does not support your inability to perform *your* occupation and

---

[2] Blickenstaff challenges both the district court's summary judgment ruling upholding the Plan's denial of her second internal appeal and its bench trial determination that the Plan reasonably terminated her benefits in the first instance. To aid comprehension and for organizational ease, the facts relating to the district court's summary judgment ruling on the appeal denial will be recounted later in the opinion when we address the merits.

> no [short term disability] benefits are available beyond March 14, 1999. [Emphasis added].

In its ruling, the district court did not directly address Blickenstaff's claim that the Plan used the wrong disability definition. Rather, it focused on Blickenstaff's other arguments that 1) the Plan used the wrong job description in evaluating her ability to perform her position; 2) the medical evidence did not support the conclusion that she could perform the job described in the incorrect job description; and 3) even if the Plan used the correct job description in evaluating her claim, the medical records still failed to support the finding that she could return to work.

Evidence presented at trial showed that, on November 19, 1998, Blickenstaff's supervisor filled out a physical demands analysis form that was allegedly supposed to describe the current physical demands of her job ("November job description"). The Plan requested the November job description as part of its decision-making process with regard to covering Blickenstaff's claim. The November job description stated that as part of her job as material handler, Blickenstaff was required to lift one-to-ten pounds constantly (with constantly defined as 67% to 100% of the workday); eleven-to-twenty pounds frequently (with frequently defined as 34% to 66% of the workday), and twenty-one-to-fifty pounds occasionally (with occasionally defined as 0-33% of the workday). The supervisor also recorded that only 10% of Blickenstaff's job included sedentary work, meaning lifting ten pounds maximum, and the other 90% of her job was light work, defined as lifting twenty pounds maximum. Blickenstaff correctly pointed out that the November job description did not comply with her permanent restrictions and argued at trial that to the extent the Plan believed the job as represented in the November job description was her job and the job to which she would return, it was wrong.

Blickenstaff next argued that the functional capacity eval-uation, an exam performed by Independence Rehabilitation on February 16, 1999 at the Plan's request and upon which the Plan heavily relied in terminating her benefits ("February exam"), showed she could not perform her job as outlined in the November job description. Specifically, the February exam results showed she could only lift five-to-seven pounds constantly, seven-to-fifteen pounds frequently, and ten-to-twenty pounds occasionally. The November job description, Blickenstaff noted, stated that she needed to lift in excess of those amounts on a daily basis.

Blickenstaff also argued that even if the Plan utilized the correct job description—the accommodated job description in which she never lifted over ten pounds—the February exam still didn't support that she could return to work. Here, she pointed to the fact that the February exam reported she could only lift five-to-seven pounds constantly, not ten. The February exam noted, however, that based on the test results, Blickenstaff could work an eight-hour day in a light-duty position. Significantly, the February exam also stated that during the testing, "Ms. Blickenstaff exhibited symptom/disability exaggeration behavior" and that certain results "suggest[ed] very poor effort or volun-tary submaximal effort which is not necessarily related to pain, impairment or disability."

Judge Barker did not find any of Blickenstaff's arguments persuasive. The judge first determined that the Plan made its decision based on the accommodated job description, not the November job description. Donnelley clarified, in a letter to Hartford dated January 25, 1999, that as of June 1, 1998, Blickenstaff worked in an accommodated job with the following restrictions: "refrain from standing more than 2 hours, lifting greater than 10 lbs., bending, stooping, climb-ing." The March 18, 1999 letter terminating Blickenstaff's benefits specifically cited the January letter and described Blickenstaff's job demands in terms of the restrictions listed

therein.

The judge also confirmed that the accommodated job was the appropriate one for the Plan to use in its evaluation of Blickenstaff's claim because it was the position she held at the time she sought disability benefits. The judge observed that when Blickenstaff first appealed the determination terminating her benefits, she attached the nurse's note establishing her June 1 restrictions and acknowledged that she was working within those restrictions at the time she sought short term disability benefits in October of 1998. At no time during the internal appeals process did Blickenstaff argue that the Plan used the wrong job description or that she was working outside of the restrictions set down in June of 1998 and described in the January 25, 1999 letter.

Having found that the Plan made its determination based on Blickenstaff's accommodated job, the judge determined that the Plan did not act arbitrarily and capriciously in terminating benefits. The judge noted that the Plan forwarded the February exam—the most recent medical information available to it—to Blickenstaff's treating physician, Dr. Williams, and asked him whether he agreed with the results. Dr. Williams responded that he agreed Blickenstaff was "capable of light work for eight hours a day." The judge, equating Blickenstaff's accommodated job to a light-duty position, noted that the physician's affirmation of the February exam results could reasonably be read to state that he agreed Blickenstaff could perform the accommodated job. Hence, Judge Barker determined that the Plan reasonably found that Blickenstaff could perform her occupation and was thus ineligible for any further short term disability benefits.

## B. Sanctions

The district court granted sanctions against Blickenstaff's counsel based on two alleged Rule 11 violations that took place during the course of the litigation.

### 1. Second Amended Complaint

Blickenstaff originally filed her complaint in state court, alleging ERISA violations against three entities: the Plan, Donnelley, and Hartford. After the case was removed to federal district court, Donnelley and Hartford separately moved to dismiss the complaint against them under Federal Rule of Civil Procedure 12(b)(6). The Plan also moved to strike portions of the complaint under Rule 12(f).

On its face, the complaint asserted only a § 502(a)(1)(B) claim for benefits, which generally is limited to a suit against the Plan, not an employer like Donnelley or the claims evaluator, Hartford. *See Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001) ("We have continually noted that 'ERISA permits suits to recover benefits only against the Plan as an entity.'") (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996)). Blickenstaff did not dispute that the § 502(a)(1)(B) claim applied only to the Plan, but argued that the complaint could be read to assert a § 503(a)(3) breach of fiduciary duty claim against Donnelley and Hartford.

The district court rejected this argument, found that the complaint stated only a § 502(a)(1)(B) claim against the Plan, and dismissed the complaint against Donnelley and Hartford *with prejudice*. Importantly, the court stated in a footnote that "there is no reason to allow Blickenstaff to amend her complaint to sufficiently allege a [§ 503(a)(3)] breach of fiduciary duty claim against either Donnelley or Hartford." The court also granted, in part, the Plan's Rule 12(f) motion to strike certain language contained in the complaint and ordered Blickenstaff to revise the complaint as outlined in the ruling.

The entry granting the motions to dismiss and granting in part and denying in part the motion to strike was dated January 29, 2001. On that same day, allegedly before she had seen the court's ruling, Blickenstaff mailed to the court

a motion to amend her complaint, with a proposed first amended complaint attached. The first amended complaint specifically alleged § 503(a)(3) breach of fiduciary duty claims against Donnelley and Hartford, in addition to the § 502(a)(1)(B) claim against the Plan. The motion to amend was deemed filed with the court on February 2, 2001.

After receiving the district court's order dismissing the complaint against Donnelley and Hartford with prejudice and striking portions of the complaint, Blickenstaff moved to file a second amended complaint. The second amended complaint purported to remove the offending language stricken by the court, but did not remove the § 503(a)(3) breach of fiduciary duty claims asserted against Donnelley and Hartford in the first amended complaint. The district court never ruled on the submission of the first amended complaint, but did allow Blickenstaff to file the second amended complaint, specifically noting that it was not passing on its sufficiency in so doing.

All three defendants again moved under Rule 12(b)(6) to dismiss the second amended complaint as to Donnelley and Hartford. They argued that Blickenstaff impermissibly pled § 503(a)(3) breach of fiduciary duty claims against Donnelley and Hartford after the district court had dismissed them from the lawsuit with prejudice and after the court instructed Blickenstaff that she did not have leave to amend the complaint to assert such claims. Blickenstaff did not respond to the motion to dismiss, instead addressing the merits of the breach of fiduciary duty claims in her response to the defendants' summary judgment motion, filed after the motion to dismiss.

The district court, in conjunction with its ruling on the summary judgment motion, granted the Rule 12(b)(6) motion on res judicata grounds. It stated:

> Here, the Second Amended Complaint plainly realleges claims against Hartford and Donnelley that we dismissed

> with prejudice in the previous order. Plaintiff has not responded to Defendants' Motion to Dismiss and offers no explanation in the Response to Motion for Summary Judgment as to why these dismissed claims should be revived.

*Blickenstaff*, No. 00-C-983-B/S, 2001 U.S. Dist. LEXIS 22895, at *8-9.

In granting the Plan's motion for sanctions based on the above series of events, the district court agreed that Blickenstaff's attorneys had violated Rule 11 by amending her complaint to state claims against parties previously dismissed with prejudice. The court ordered Blickenstaff's attorneys to pay the Plan's attorneys' fees and costs incurred to "fend off" the prohibited § 503(a)(3) claims in the second amended complaint.

### 2. Utschig Affidavit

The case management plan established by the district court ordered the parties to disclose expert witnesses by May 8, 2001. On July 23, 2001, after the deadline had passed, Blickenstaff attached the affidavit of a purported expert, Leroy H. Utschig, to her response to the Plan's motion for summary judgment. The Plan moved to strike it, and the magistrate judge agreed.

The magistrate judge based her decision on several grounds: 1) that Blickenstaff did not comply with the case management plan deadline for expert disclosures and provided no reason or excuse for this failure; 2) that if a trial should be held in the case, it would be limited to the administrative record, of which Utschig's affidavit was not a part; and 3) that the affidavit and accompanying report were insufficient in numerous regards, including their failure to provide any specific information about Utschig's professional and educational background from which the court could de-

termine his qualifications as an expert. After the magistrate judge struck the affidavit on October 3, 2001, Blickenstaff made no further attempts to utilize it in support of her case.

The district court granted sanctions, again in the form of the Plan's attorneys' fees and costs, because it found, incorrectly, that Blickenstaff had relied on the affidavit in its summary judgment response *after* the affidavit had been stricken from the record.

## II. Analysis

### A. Evidence at Trial

Blickenstaff's first argument on appeal, that evidence at trial was improperly limited to the administrative record, is baseless. In ruling on the Plan's motion to strike Utschig's expert affidavit offered as part of the summary judgment briefing, the magistrate judge offered several reasons for doing so—one of which was that the evidence at trial, should there be one, would be limited to the administrative record. Blickenstaff points to that ruling as limiting the evidence she was allowed to present at trial.

Yet, contrary to what the magistrate judge indicated, Judge Barker, who presided over the bench trial, *denied* both the Plan's motion to limit evidence at trial to the administrative record (R. at 148) and its motion in limine, presented the day of trial, requesting the same (R. at 153; Tr. at 5.) Indeed, Judge Barker specifically *allowed* Blickenstaff to attempt to enter the one piece of evidence she offered that was outside the administrative record—a summary plan description dated after the date of her disability—through the plaintiff's own testimony at trial. After Judge Barker denied the document's admission,[3] she asked Blickenstaff if

---

[3] Blickenstaff does not specifically challenge Judge Barker's decision not to admit the summary plan description.

there was any further evidence outside of the administrative record she wished to offer. (Tr. at 18.) Her attorney responded that he would rest on the administrative record (*id.*), and he offered no additional documents or testimony. Because the evidence at trial was not limited to the administrative record as Blickenstaff inexplicably claims, we can move swiftly to our examination of the district judge's determination on the merits.[4]

## B.  Merits

### 1.  Benefit Termination Decision

Because this case was tried to a judge, not a jury, our standard of review is established by Federal Rule of Civil Procedure 52(a), which provides, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." *See Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1044 (7th Cir. 2002). "Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v.*

---

[4]  We note that if Judge Barker had limited evidence at trial to the administrative record, we likely would not have found such a limitation to be an abuse of discretion. *See, e.g., Vallone v. CNA Fin. Corp.*, No. 03-2090, 2004 U.S. App. LEXIS 14610, *11-12 (7th Cir. July 15, 2004) (finding that the district judge appropriately limited discovery on the plaintiffs' benefits termination claim to the administrative record, when such a decision was subject to deferential review); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999) ("Deferential review of an administrative decision means review on the administrative record. We have allowed parties to take discovery and present new evidence in ERISA cases subject to de novo judicial decision, but never where the question is whether a decision is supported by substantial evidence, or is arbitrary and capricious.") (internal citations omitted).

*Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993), *quoted in Am. Nat'l Fire Ins. Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 924, 928 (7th Cir. 2003).

We review the district court's legal determinations de novo, *Am. Nat'l Fire Ins. Co.*, 325 F.3d at 928; *Cerros*, 288 F.3d at 1044, applying the arbitrary and capricious standard of review to the Plan's benefit eligibility decisions. We use the arbitrary and capricious standard because the Plan language provided that Hartford, the claims evaluator acting on behalf of the Plan, had "full discretion and authority" to determine benefits payable and to construe and interpret all terms and provisions of the Plan in connection with this determination, which would include eligibility requirements. *See Dabertin v. HCR Manor Care, Inc.*, No. 03-1918, 2004 U.S. App. LEXIS 12509, at *10 (7th Cir. June 24, 2004) ("Where an ERISA plan gives the plan administrator discretion to interpret the plan terms or determine benefits eligibility, a reviewing court employs the arbitrary and capricious standard."). The arbitrary and capricious standard requires us to give great deference to the Plan's decision, which cannot be overturned unless it's downright unreasonable. *Id.* at *11-12.[5]

---

[5] We pause to note that in support of her claim that she was entitled at trial to present evidence outside of the administrative record, and elsewhere in her opening brief, Blickenstaff alleges that the trial judge was obligated to apply a de novo, as opposed to an arbitrary and capricious, standard of review to the Plan's decision to deny her short term disability benefits. Not only is this incorrect, it is waived. Blickenstaff herself stated, in response to the Plan's summary judgment motion, that the court was to apply a discretionary standard of review in this case. (R. at 101, p. 2). At no time thereafter did she press for a de novo standard of review—not in her response to the Plan's motion to reconsider the court's summary judgment ruling, not at trial, not in her motion to reconsider the entry after bench trial, nor in her reply supporting
(continued...)

Blickenstaff first makes the untenable argument that the district court applied the wrong disability definition, evaluating her short term disability claim under a standard that requires her to be unable to perform "any" occupation as opposed to "her" occupation to receive benefits. Blickenstaff bases this argument solely on the court's factual summary section of its ruling, which states, in pertinent part: "Ms. Blickenstaff applied for, and received, short term disability (STD) benefits. In February 1999, she applied for long term disability (LTD) benefits. The Plan denied her the requested benefits in a letter of March 18, 1999." Blickenstaff reads the last sentence, when it refers to "the requested benefits" to mean long term disability benefits, and from there theorizes that the court fundamentally misunderstood the nature of the extensively litigated case before it to be about the denial of long term disability benefits under an "any" occupation standard as opposed to a short term disability benefits case under a "your" occupation standard.

The body of the court's opinion, however, belies such a conclusion; it is evident from the face of the ruling that the court applied the proper "your" occupation standard. Although it never recites the short term disability definition, which looks for the employee's inability to perform the essential duties of his or her specific occupation, the court concentrated on what job description the Plan used in reaching its determination and evaluated whether Blickenstaff's accommodated job fell within her medical limitations as outlined by her healthcare providers. In doing so, the court obviously applied the job-specific "your" occupation standard and not the broader "any" occupation standard.

---

5  (...continued)
that motion. Because she failed to raise this argument at the district court level, and most especially because she affirmatively represented the opposite position below, we will not consider it now. *See Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002).

Blickenstaff's other arguments track those made to the district court at trial—that the Plan utilized the wrong job description in making its decision and even if it didn't, the medical information shows that she could not perform her accommodated position. Neither has merit.

The district court did not make a factual error in determining that the Plan compared Blickenstaff's medical information with the accommodated job description and not the November job description. As noted by the district court, the letter terminating Blickenstaff's benefits specifically described her job as the accommodated position, not the November job description position. And, Blickenstaff acknowledged in her internal appeal that the last job she performed at Donnelley was the accommodated position, not the one described by the November job description. Even though the March 18, 1999 termination letter references the November job description as part of Blickenstaff's file and internal notes reveal some confusion over which job description—the November job description or the accommodated job description—applied, we agree with the district court that the March 18, 1999 letter exhibits a clear understanding of Blickenstaff's position as the accommodated one.

The district court also came to the proper legal conclusion that the Plan had a reasonable basis for terminating Blickenstaff's benefits because the medical evidence indicated she could perform her accommodated position. Comparing the results of the February exam, which stated Blickenstaff could perform light work eight hours a day, lifting up to seven pounds constantly and up to fifteen pounds frequently, to her accommodated position, which prohibited lifting over ten pounds and other strenuous movement, the Plan reasonably concluded that Blickenstaff was capable of performing her job.

Blickenstaff counters that because the February exam indicated she could only lift up to seven pounds constantly, she was incapable of performing the accommodated posi-

tion, which maintained a ten-pound lifting restriction. Yet, there's no evidence in the record that Blickenstaff actually lifted ten pounds constantly during the workday, rather than the seven of which she was capable according to the February exam. And, Blickenstaff wholly ignores that the Plan's decision was further supported by record evidence showing that her treating physician agreed that she could perform light work for eight hours a day and that he agreed with the results of the February exam. Notably, the February exam indicates that Blickenstaff did not put forth her best effort during testing, leading to a reasonable inference that she could perform even more work than that expressed by the February exam. *Cf. Leipzig v. AIG Life Ins. Co.*, 362 F.3d 406, 409 (7th Cir. 2004) (noting that "insurers . . . must consider the possibility that applicants are exaggerating in an effort to win benefits (or are sincere hypochondriacs not at serious medical risk)"). The record here leads firmly to the conclusion that the Plan acted reasonably, and the judge did not commit reversible error in so finding.

### 2.  Appeal Denial

Blickenstaff also makes an underdeveloped argument that the district court erred in finding, on summary judgment, that the Plan acted reasonably in denying her second internal appeal contesting the termination decision. Blickenstaff submitted two appeals. Although she does not challenge the Plan's determination as to the first appeal, we recount it briefly to provide context for the second appeal.

Blickenstaff's first appeal consisted of a letter claiming she had been diagnosed with fibromyalgia, which she said would be confirmed by an examination of her medical records. The only evidence submitted with the letter was a copy of her June 1, 1998 note outlining her restrictions, which, as stated earlier, Blickenstaff represented were in effect at the time she stopped working in October of 1998.

In response to the letter, the Plan spoke with Blickenstaff's physician, Dr. Williams, about the fibromyalgia diagnosis. Dr. Williams stated that he was unsure whether Blickenstaff had fibromyalgia, noting that when he initially started treating her she just complained of chronic back pain. More recently, he observed, Blickenstaff complained of all the textbook symptoms of fibromyalgia, but he couldn't determine whether they were real or if she had just done a lot of research on the disease. He reiterated that he continued to agree with the results of the February exam and that he had no objective evidence for the Plan in support of her fibromyalgia claim. The Plan denied the appeal.

Blickenstaff appealed again, this time submitting a May 3, 1999 report from Dr. Acosta-Rodriguez, the physician to whom Donnelley had referred her in the past and who was not her own treating physician. His report did not confirm the fibromyalgia diagnosis, either. In fact, it stated: "When presented to me the patient states that essentially she has had chronic back pain since she has last saw me and that she is sure it is because of the fibromyalgia that I diagnosed her with. I did not recall ever diagnosing her with fibromyalgia, I rechecked my notes and found no mention of fibromyalgia . . . ." The report goes on to state that "[o]n classic fibromyalgia tender point examination the patient had only 3 out of 18 spots that were tender consistent with fibromyalgia." Dr. Acosta-Rodriguez ultimately diagnosed her with "very mild thoracic outlet symptoms, very mild fibromyositis of the lumbar fascia, more consistent with fascitis then [sic] fibromyalgia or myofascial pain syndrome." He noted that the last diagnosis was based only on Blickenstaff's subjective complaints of pain and not on any objective findings. He prescribed seven sessions of physical therapy for the thoracic outlet symptoms and told her not to return to work until she completed the physical therapy.

In response to the receipt of this report, the Plan sent Dr. Acosta-Rodriguez a copy of the February exam and asked if

he agreed with the results and if not, why not. Dr. Acosta-Rodriguez responded in writing that he agreed "that the test appears to be correct in determining that she is able to carry out her duties in the 'lite [sic] physical demand' level for an eight-hour day."

About a month after submitting Dr. Acosta-Rodriguez's May 3, 1999 report, Blickenstaff sent the Plan another medical report from a new physician, Dr. Douglas, dated May 18, 1999, in support of her appeal. He diagnosed her with chronic intermittent back pain.

The Plan denied her second appeal. It explained that Dr. Acosta-Rodriguez's report did not support her claimed diagnosis of fibromyalgia and that Dr. Acosta-Rodriguez, like her treating physician, Dr. Williams, agreed with the results of the February exam. Because her medical providers were in accord that she could perform light-duty work and because the Plan believed that her accommodated job fell within the confines of light-duty work, the Plan explained that she did not meet benefit eligibility requirements. It also noted that the new information provided by Dr. Douglas would not be considered because it represented her condition as of the date of exam, May 18, 1999, and not the date of the eligibility determination, March 14, 1999.

Blickenstaff argued, in response to the Plan's summary judgment motion, that the Plan acted in bad faith by failing to consider Dr. Douglas's May 18, 1999 report diagnosing her with chronic intermittent back pain and Dr. Acosta-Rodriguez's May 3, 1999 report diagnosing her with "very mild thoracic outlet symptoms." She insisted that they were relevant to her condition on March 14, 1999, the date benefits were terminated, even though the diagnoses took place close to two months later.

The district court disagreed, employing the deferential arbitrary and capricious standard:

> [W]e do not find the decision to exclude evidence amassed after March 13, 1999, to be downright unreasonable.

> Defendants' refusal to consider such evidence is rationally related to the goal of determining Plaintiff's physical capabilities on the specific dates for which coverage was sought and ultimately denied. Both Dr. Williams and Dr. Acosta-Rodriguez indicated that Plaintiff's [February exam] accurately reflected her capabilities. Such conclusions naturally reflect Plaintiff's condition on the date she underwent examination. Defendants' refusal to extrapolate backward in time from the date of these examinations to determine Plaintiff's physical condition two months earlier was not sufficiently unreasonable to warrant disruption of the benefits eligibility decision.

*Blickenstaff*, No. 00-C-983-B/S, 2001 U.S. Dist. LEXIS 22895, at *14.

We review the district court's grant of summary judgment on this issue de novo, construing all facts and inferences in the light most favorable to the non-moving party. *Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 782 (7th Cir. 2004). As explained earlier, we evaluate the Plan's determination under the deferential arbitrary and capricious standard. For an administrative decision to pass muster under this test, the Plan had to "articulate a rational connection between the facts found, the issue to be decided, and the choice made." *Dabertin*, No. 03-1918, 2004 U.S. App. LEXIS 12509, at *12.

The district court properly determined that the decision to deny Blickenstaff's second appeal was not arbitrary and capricious. It's evident from the record that the Plan took Blickenstaff's second appeal seriously and examined the materials she submitted in its support. Yet, Dr. Acosta-Rodriguez's report did not show she suffered from fibromyalgia as she claimed, and he confirmed in writing that she could perform light-duty work as found in the February exam. Although Dr. Acosta-Rodriguez and Dr. Douglas diagnosed Blickenstaff with medical conditions, we agree with the district court that

the Plan was not obligated to accept these diagnoses as relevant to her condition as of the March 1999 decision to terminate her benefits. Both diagnoses were made in May, two months after the Plan's determination. As observed by the district court, it was not unreasonable for the Plan to refuse to speculate as to whether those diagnoses existed as of the March decision, especially when Dr. Acosta-Rodriguez specifically stated, despite his diagnosis, that he believed Blickenstaff was capable of performing light-duty work eight hours a day and when Dr. Douglas had no established history with Blickenstaff.

## C. Sanctions

We review a district court's decision to impose sanctions under Rule 11 for abuse of discretion. *Vollmer v. Selden*, 350 F.3d 656, 659 (7th Cir. 2003) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). "A district court abuses its discretion in imposing Rule 11 sanctions when it bases its decision 'on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 448 (7th Cir. 1993) (quoting *Cooter & Gell*, 496 U.S. at 405).

Blickenstaff argues that the district court's order dismissing, with prejudice, her complaint against Donnelley and Hartford and stating, albeit in a footnote, that any amendment would be futile, did not act as a bar to her reassertion of the breach of fiduciary duty claims in the second amended complaint. Her position on this issue is hard to comprehend, but she appears to argue that because the court specifically found that the breach of fiduciary duty claims had been inadequately pled, she was free to replead them against Donnelley and Hartford in later filings. This, of course, flies in the face of plain words of the order, which dismisses Donnelley and Hartford from the suit, *with prejudice*, and states that "there is no reason to allow

Blickenstaff to amend her complaint to sufficiently allege a breach of fiduciary duty claim against either Donnelley or Hartford."

Moreover, regardless of its merits, this argument is waived. *See Williams*, 302 F.3d at 666 ("A party waives any argument that it does not raise before the district court . . . ."). Blickenstaff had an opportunity, upon the original defendants' motion to dismiss the second amended complaint, to explain why the breach of fiduciary duty claims were properly included despite the court's prior order. She did not respond, and the court noted this silence both in its ruling on the motion to dismiss and in its order granting sanctions. Moreover, in her response to the Plan's motion for sanctions, Blickenstaff defended her actions with an argument different from the one made here. She argued to the district court that her second amended complaint was an attempt to show, purportedly by example, and without explanation, the reasons why an amended complaint should be permitted. The argument made below and the argument made here differ fundamentally: below she admitted that the order forbade her from amending the complaint, arguing that the second amended complaint was an attempt to persuade the court to reconsider its position; here, she insists that the order did not forbid an amendment at all.

We find that the district court did not abuse its discretion in granting sanctions for Blickenstaff's failure, without adequate explanation, to follow a clear order barring the assertion of the breach of fiduciary duty claims, necessitating another motion to dismiss by the original defendants and another ruling by the district court.

However, the district court erred in evaluating the facts surrounding Blickenstaff's use of the Utschig affidavit. It based its award for sanctions with respect to the Utschig affidavit on its belief that Blickenstaff relied on the affidavit in her response to the motion for summary judgment *after* it had been stricken from the record by the magistrate

judge. The record shows, however, that Blickenstaff submitted the affidavit *with* her summary judgment response, *then* the affidavit was stricken pursuant to the Plan's motion. The Plan does not dispute that the district court was mistaken in the order of events or that Blickenstaff never relied on the affidavit after it was stricken from the record.

Because the district court made a factual mistake when evaluating Blickenstaff's use of the Utschig affidavit and because it is undisputed that Blickenstaff did not improperly rely on the affidavit once it was stricken, there should have been no award of sanctions on this issue. We note that the accounting submitted by the Plan in support of the sanctions award delineates the time its attorneys spent on the motion to dismiss the second amended complaint and the motion to strike the Utschig affidavit. Based on our review of this accounting, the $943.50 in sanctions levied against Blickenstaff's counsel pertaining to the Utschig affidavit must be vacated. The remaining sanctions award of $1890.00, attributable to the Plan's expenses incurred in fending off the claims against Donnelley and Hartford in the second amended complaint, is affirmed.

### III.  Conclusion

We AFFIRM the judgment of the district court that the Plan did not act arbitrarily and capriciously in terminating Blickenstaff's short term disability benefits and in refusing to reinstate them on appeal. We further AFFIRM the award of sanctions in the amount of $1890.00; the balance of $943.50 is VACATED.

A true Copy:

    Teste:

                      _____
                      *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*