# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-3911

ALFREDO RUIZ,

*Plaintiff-Appellant,*

v.

CONTINENTAL CASUALTY COMPANY
and STERLING, INCORPORATED, LONG
TERM DISABILITY PLAN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 02 C 73—**Rudy Lozano**, *Judge.*

_____

ARGUED OCTOBER 27, 2004—DECIDED MARCH 11, 2005

_____


Before FLAUM, *Chief Judge*, and MANION and WILLIAMS,
*Circuit Judges.*

MANION, *Circuit Judge.* Alfredo Ruiz worked as a produc-
tion supervisor for Application Engineering Corp. ("AEC"),
a subsidiary of Sterling, Inc. ("Sterling"), where he partici-
pated in Sterling's long-term disability plan. When he was
denied long-term disability benefits he sued the insurance
company, Continental Casualty Co. ("Continental") and

Sterling's disability plan. The district court granted summary judgment for the defendants, holding that Continental's decision to not extend long-term disability benefits to Ruiz was neither arbitrary nor capricious. We affirm.

## I.

### A.  Ruiz's Injury, Medical Examinations, and Continental's Decisions Regarding Benefits

In late 1998, Ruiz aggravated a prior back injury when he fell down a flight of stairs. This was not Ruiz's first back problem. Ruiz had apparently experienced problems with his back since 1981 and underwent surgery that year, and again in 1987, for the problems. On July 14, 1999, Ruiz submitted a claim to Continental for disability benefits. Ruiz was forty-one years old when he submitted his claim and had not worked since February 9, 1999.

Ruiz's claim form he submitted to Continental stated that he was totally disabled and could not perform his job because he was unable to walk, stand, or sit. Ruiz also submitted a "Physician's Statement" completed by Dr. Ronald Pavelka. Dr. Pavelka diagnosed Ruiz with "marked generalized bulging" of a spinal disc. Dr. Pavelka included with his statement an MRI of Ruiz's spine. Dr. Pavelka's statement also included a comment that because of physical limitations Ruiz "may not work" and suggested that Ruiz's prognosis was indefinite.

During the second half of 1999, Continental received more medical records from doctors who had evaluated Ruiz (Dr. Pavelka and a second doctor, Dr. Marc Levin), as well as assessments from these doctors concerning Ruiz's physical and occupational limitations. Dr. Pavelka continued to assert that Ruiz could not work and that he could not sit,

stand, or walk for any time during an eight-hour workday. Dr. Levin initially concluded that Ruiz had some limited ability to sit, walk, and stand during an eight-hour work-day. Dr. Levin later reconsidered his evaluation, however, and suggested that Ruiz could sit up to three hours at one time and could stand and walk for up to two hours at one time. On January 21, 2000, Continental approved Ruiz's claim, retroactive to August 9, 1999 (six months after Ruiz's last day at work). Under the terms of the insurance policy issued by Continental, this approval entitled Ruiz to up to twenty-four months of disability benefits.

Continental's policy has two phases of disability benefits. During the first phase, an employee is considered disabled if he is unable to perform the duties of his job at Sterling (or in Ruiz's case, the subsidiary, AEC). The second phase begins if an employee has been disabled, as defined by the first phase, for twenty-four months. In the second phase, however, an employee is disabled only if he is unable to engage in *any* job for which he is qualified, as measured by his education, training, or experience.

Continental's January 2000 approval, therefore, was a recognition that Ruiz was unable to return to his job at AEC. Continental continued, however, to monitor Ruiz's progress. In July 2000, Continental wrote to Ruiz to inform him that it believed he was capable of performing alternate work (thus disqualifying Ruiz for the longer-term benefits under the second phase of the policy) and that Ruiz's benefits would be terminated on August 8, 2001 (twenty-four months after his benefits began).

In November 2000, Ruiz submitted a supplemental claim form. As part of that form, a new physician, Dr. Kathryn Hanlon, diagnosed Ruiz with an "intervertebral disc disorder" and "postlaminectomy syndrome." Dr. Hanlon also

indicated that Ruiz was totally disabled but that he would "recover sufficiently to perform duties" as of December 1, 2000.

On August 31, 2001, after his entitlement to benefits had ended, Continental received an appeal letter from Ruiz. The letter included medical records from a new doctor, Dr. Ramesh Kanuru. The records indicated that Dr. Kanuru performed surgery to implant a spinal cord stimulator in Ruiz. The records also noted that Ruiz was using a "spine patch." Continental reviewed these records but decided that they did not change its decision to terminate Ruiz' benefits.

## B.  Sterling's Plan for Disability Benefits and Continental's Insurance Policy

The Summary Plan Description ("SPD") for Sterling's long-term disability plan (the "Plan") lists the Plan Administrator as Sterling and named subsidiaries (including AEC). The SPD also states that "[t]he Plan is administered by the Plan Administrator through an insurance contract purchased from [Continental]." In addition, the SPD provided that "[t]he Administrator and other Plan fiduciaries have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to benefits in accordance with the Plan."

Continental issued to each eligible employee of Sterling a policy certificate (the "Certificate"). The Certificate states that "[w]hen making a benefit determination under the policy, *We* [defined in the policy as Continental] have discretionary authority to determine *Your* [defined in the policy as the employee] eligibility for benefits and to interpret the terms and provisions of the policy." (Emphasis in the original.) The Certificate also notes that "[t]he policy is delivered in and governed by the laws of the governing jurisdiction and

to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments." There are no other documents relevant to the Plan.

## C.  The Present Action

On February 27, 2002, Ruiz filed the present action in the district court seeking damages for wrongful denial of benefits under the Employment and Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) ("ERISA"). Continental moved for summary judgment which the district court granted. The district court held that under ERISA, Continental was a fiduciary. The district court also held that Continental's decision to deny Ruiz benefits was subject to an arbitrary and capricious standard of review. Finally, the district court concluded that the decision was neither arbitrary nor capricious and granted summary judgment in favor of Continental. This appeal followed.

## II.

We review a grant of summary judgment de novo. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 631 (7th Cir.), *cert. denied*, 125 S. Ct. 670 (2004). A party is entitled to summary judgment in its favor when "there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *Id.*; Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.  The Standard of Review of Continental's Decision

As a preliminary matter, the standard of review we utilize with respect to the underlying decision of Continental to deny benefits to Ruiz is vigorously disputed by the parties.

This court recently explained the possible standards of review in cases asserting a wrongful denial of benefits:

> Ordinarily, "[a] denial of benefits will be reviewed de novo 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.' " *Militello v. Cent. States, Southeast & Southwest Areas Pension Fund*, 360 F.3d 681, 685 (7th Cir. 2004) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). If the plan's language "indicates with the requisite if minimum clarity that a discretionary determination is envisaged," *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000), "then a denial of benefits will be reviewed under an arbitrary and capricious standard." *Militello*, 360 F.3d at 685 (citing *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

*Vallone*, 375 F.3d at 631.

Our analysis has two parts. First, is Continental a fiduciary? Second, assuming Continental is a fiduciary, are fiduciaries granted sufficient discretionary authority under the terms of Sterling's Plan? If the answer to either of these questions is no, we will review Continental's decision to deny Ruiz benefits de novo. If, on the other hand, the answer to both questions is yes, we will review Continental's decision under the highly deferential arbitrary and capricious standard.

Continental argues, and the district court held, that it is a fiduciary for the Plan and that the Plan vests fiduciaries with discretionary authority with respect to claims for benefits. Therefore, its decision to deny benefits should be reviewed under the arbitrary and capricious standard. Ruiz instead argues that Continental is not a fiduciary and, therefore, we should review Continental's decision to deny Ruiz benefits de novo.

*1.   Is Continental a Fiduciary?*

Section 3(21)(A) of ERISA defines a fiduciary as any person who:

> exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The measure of whether a person is a fiduciary is not whether that person is formally designated as such. Instead, a fiduciary should be viewed "in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993); *see also* ABA Section of Labor and Employment Law, Employment Benefits Law 626 (2d ed. 2000) ("A fiduciary with respect to a plan is any person that in fact performs any of the functions described in the statutory definition, regardless of the formal relationship, if any, that person has with the plan."). A court should thus look to whether a proposed fiduciary exercises control or authority over a particular benefit in an ERISA plan.

In this case we are concerned with whether Continental fits the third criterion. That is, whether it "has any discretionary authority or discretionary responsibility in the administration of [the] plan." 29 U.S.C. § 1002(21)(A)(iii).

In *Aetna Health Inc. v. Davila*, 124 S. Ct. 2488 (2004), the Supreme Court held that "[w]hen administering employee benefit plans, HMOs must make discretionary decisions regarding eligibility for plan benefits, and, in this regard, must be treated as plan fiduciaries." *Id.* at 2502. The Court

concluded that "[c]lassifying any entity with discretionary authority over benefits determinations as anything but a plan fiduciary would . . . conflict with ERISA's statutory and regulatory scheme." *Id.*

In light of *Davila*, we conclude that Continental was acting as a fiduciary when it determined that Ruiz was not eligible for disability benefits. As the Supreme Court noted, "[a] benefit determination under ERISA . . . is generally a fiduciary act." *Id.* at 2501.

### 2.  Does the Plan grant Continental the authority to construe its terms or determine eligibility for benefits?

Having determined that Continental is indeed a fiduciary, we must determine whether the Plan grants it the authority to construe the terms of the Plan or determine eligibility for benefits. *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 379 (7th Cir. 1994).

Continental argues that the Plan does, pointing to the Certificate issued to Ruiz that states that "[w]hen making a benefit determination under the policy, [Continental has] the discretionary authority to determine *Your* eligibility for benefits and to interpret the terms and provisions of the policy." (Emphasis in the original.) While this court has held that no "magic words" are necessary for a grant of discretionary authority, *id.* (quoting *Sisters of the Third Order of St. Francis v. SwedishAmerican Group Health Benefit Trust*, 901 F.2d 1369, 1379 (7th Cir. 1990)), the language in the Certificate is surely sufficient.

Ruiz, however, argues that the Certificate and the insurance policy issued by Continental are not plan documents and, therefore, there is no language in a plan document that vested Continental with the authority to construe the terms

of the Plan or determine eligibility for benefits. In support of his argument, Ruiz quotes from this court's decision in *Wallace v. Reliance Standard Life Ins.*, 318 F.3d 723 (7th Cir. 2003). In *Wallace*, this court noted that "*Pegram* [*v. Hedrich*, 530 U.S. U.S. 211 (2000)] concluded that a contract of insurance sold to a plan is not itself 'the plan' . . . ." *Wallace*, 318 F.3d at 724. Ruiz takes this to mean that an insurance policy issued pursuant to a contract for insurance does not constitute a plan document.

*Pegram*, however, does not hold that an insurance policy is not a plan document. *Pegram* holds only that "the provisions of documents that set up [an] HMO are not as such, a plan." *Pegram*, 530 U.S. at 223. In fact, the Court went on to suggest that provisions of a contract between an HMO (and, by extension, an insurer such as Continental) and an employer can be part of a plan. *Id.* ("[T]he agreement between an HMO and an employer who pays the premiums *may provide . . . elements of a plan* by setting out rules under which beneficiaries will be entitled to care.") (emphasis added).

Moreover, we have considered an insurance policy a plan document before. In *Postma v. Paul Revere Life Insurance Co.*, 223 F.3d 533, 537-40 (7th Cir. 2000), this court considered whether an insurance policy issued by Paul Revere gave the company the necessary discretion to entitle it to the arbitrary and capricious standard of review of its decision to deny a plaintiff disability benefits. *See also Houston v. Provident Life and Accident Ins. Co.*, 390 F.3d 990, 994 (7th Cir. 2004) (in concluding that a defendant was entitled to the arbitrary and capricious standard noted that "*the policy* grants Provident 'full, exclusive, and discretionary authority to control, manage, and administer claims.'") (emphasis added). Other circuits have also held that insurance policies are plan documents. *Ross v. Rail Car Am. Group Disability*

*Income Plan*, 285 F.3d 735, 739 n.5 (8th Cir. 2002); *Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1441 (9th Cir. 1995); *Gable v. Sweetheart Cup Co.*, 35 F.3d 851, 856 (4th Cir. 1994); *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 900-01 (6th Cir. 1988); *see also Shaw v. Conn. Gen. Life Ins. Co.*, 353 F.3d 1276, 1282-83 (11th Cir. 2003) (treating an insurance policy as plan document).

In this case, the insurance policy and the Certificate are plan documents. The plan documents granted Continental the requisite discretionary authority. Continental is entitled, therefore, to have its decision to deny Ruiz benefits reviewed under an arbitrary and capricious standard.

## B.  Continental's Decision

A fiduciary's decision to deny a claim for benefits is entitled to "great deference" under the arbitrary and capricious standard of review. *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 677 (7th Cir. 2004). It is not enough that we might disagree with a fiduciary's decision concerning benefits; we cannot overturn a decision to deny benefits unless the decision was "downright unreasonable." *Id.*[1]

Continental's decision was not "downright unreasonable." The Plan required Ruiz to submit objective medical findings

---

[1] Ruiz has not presented specific evidence that Continental suffered from a conflict of interest that would require this court to apply the sliding scale of deference described in *Manny v. Cent. States, S.E. & S.W. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 242-43 (7th Cir. 2004). *See Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) (requiring "specific evidence of actual bias that there is a significant conflict"). We apply, therefore, a "simple" arbitrary and capricious standard of review. *Manny*, 388 F.3d at 243.

to support his claim for disability. The reports of the doctors who opined that Ruiz could not perform even sedentary work (the level of exertion a vocational consultant employed by Continental concluded Ruiz could perform) are not supported by objective evidence. Instead, the primary evidence supporting Ruiz's claim that he cannot perform any work for which he is trained was his own subjective complaints of pain.

Further, the physicians' opinions about Ruiz's ability to work are somewhat inconsistent. At roughly the same time (the fall of 1999), Drs. Pavelka and Levin offered contradictory assessments of Ruiz's capacities. As noted above, Dr. Pavelka suggested Ruiz could perform no work while Dr. Levin suggested that Ruiz could perform jobs that allowed Ruiz to sit, stand, or walk such that he was standing for no more than two hours at one time, sitting for no more than three hours at one time, and walking for no more than three hours at a time. In conflict with both these earlier determinations is Dr. Hanlon's conclusion, a year later, that, although Ruiz was disabled at the time of the report, he would able to return to work duties only a short time thereafter.

Finally, Dr. Kanuru's opinion, the most recent of the four, was not supported by objective medical evidence and, instead, relied solely on Ruiz's complaints regarding his pain; evidence, as noted above, that was not sufficient under the Plan to support a claim for disability benefits.

In light of the lack of objective medical evidence supporting Ruiz's claim that he can perform no work he is trained to do, and the inconsistent conclusions of physicians reviewing Ruiz's medical records, it was not "downright unreasonable" for Continental to conclude that Ruiz was not entitled to long-term disability benefits. *Blickenstaff*, 378 F.3d at 677.

### III.

The district court properly granted summary judgment in favor of Continental. Continental served as a fiduciary to the Plan and its decision to deny Ruiz long-term disability benefits was neither arbitrary nor capricious. The decision of the district court is

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*