# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-1256

CYNTHIA LARSON, et al.,

*Plaintiffs-Appellants,*

*v.*

UNITED HEALTHCARE INSURANCE
COMPANY, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-473-bbc—**Barbara B. Crabb**, *Judge.*

ARGUED MAY 29, 2012—DECIDED JULY 26, 2013

Before WOOD, SYKES, and TINDER, *Circuit Judges*.

SYKES, *Circuit Judge*. This proposed class action alleges that six major health-insurance companies are violating Wisconsin law by requiring copayments for chiropractic care. The state insurance code prohibits health insurers from excluding coverage for chiropractic services if their policies cover the diagnosis and treatment of the same condition by a physician or osteopath. *See* WIS. STAT. § 632.87(3)(a). The insurance policies at issue here provide this coverage, although like other healthcare

services, the chiropractic coverage is subject to copayment requirements. The plaintiffs contend that section 632.87(3)(a) prohibits insurers from imposing any copayments on chiropractic care because copays in effect shift most or all of the cost of the care to the insured.

Because the plaintiffs are insured through employer-based health plans, the complaint seeks relief under two provisions of the Employee Retirement Income Security Act ("ERISA"): § 502(a)(1)(B), for recovery of benefits due, *see* 29 U.S.C. § 1132(a)(1)(B); and § 502(a)(3), for breach of fiduciary duty, *see id.* §§ 1132(a)(3), 1104. The district court dismissed the complaint, holding that insurance companies are not proper defendants on an ERISA claim for benefits and the practice of requiring chiropractic copays is not a fiduciary act.

We affirm, although on somewhat different reasoning. Many of our cases say that an ERISA claim to recover benefits due under an employee-benefits plan normally should be brought against the plan. That's the general rule, but nothing in ERISA categorically precludes a benefits claim against an insurance company. Here, the complaint alleges that the insurers decide all claims questions and owe the benefits; on these allegations the insurers are proper defendants on the § 1132(a)(1)(B) claim. The complaint fails to state a claim for breach of fiduciary duty, however. Setting policy terms, including copayment requirements, determines the *content* of the policy, and "decisions about the content of a plan are not themselves fiduciary acts." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

Although the benefits claim was properly lodged against the insurers, it fails on the merits. Section 632.87(3)(a) is unambiguous and does not prohibit chiropractic copays. The plaintiffs argue in the alternative that the insurers impose *unequal* copayments in violation of the statute. This claim is new on appeal and is therefore waived.

## I. Background

The case comes to us from a dismissal for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), so we take the facts from the complaint, accept them as true, and draw reasonable inferences in favor of the plaintiffs. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012). Cynthia Larson and the other named plaintiffs are insured under employer-sponsored healthcare plans underwritten by the six defendant insurance companies.[1] The insurers determine all eligibility and benefits questions and pay the plaintiffs' claims.

The plaintiffs regularly undergo chiropractic treatments, a common healthcare service that years ago was not routinely covered in health-insurance policies.

---

[1] The named plaintiffs are Cynthia Larson, Kimberly Dehaan, Jeannette Borden, Rebecca Bavinck, and Amy Cloute. The defendants are United Healthcare Insurance Company, Wisconsin Physicians Service Insurance Corporation, Humana Insurance Company, Network Health Plan, Blue Cross Blue Shield of Wisconsin, and Compcare Health Services Insurance Corporation.

For more than 25 years, however, Wisconsin has required health insurers operating within the state to cover chiropractic care on an equal basis as other forms of medical care for the same condition. More specifically, in 1987 the Wisconsin legislature adopted a statute banning insurance companies from excluding coverage for chiropractic services if their policies covered the treatment of the same condition by a physician or osteopath:

> (a) No policy, plan or contract may exclude coverage for diagnosis and treatment of a condition or complaint by a licensed chiropractor within the scope of the chiropractor's professional license, if the policy, plan or contract covers diagnosis and treatment of the condition or complaint by a licensed physician or osteopath . . . .

WIS. STAT. § 632.87(3)(a). The statute continues as follows:

> This paragraph does not:
>
>   1. Prohibit the application of deductibles or coinsurance provisions to chiropractic and physician charges on an equal basis.
>
>   2. Prohibit the application of cost containment or quality assurance measures to chiropractic services in a manner that is consistent with cost containment or quality assurance measures generally applicable to physician services and that is consistent with this section.

*Id.*

The complaint alleges that although the insurers provide chiropractic coverage in their policies, the coverage comes with strings attached—copayment requirements—and because chiropractic care is relatively inexpensive, the required copayments often approach or exceed the cost of the treatment.[2] The practice of requiring copays, the complaint alleges, effectively shifts all or most of the cost of chiropractic care to the patient. The legal premise of the suit is that section 632.87(3)(a) prohibits health insurers from including *any* chiropractic copays in their policies.

The complaint invokes two of ERISA's remedial provisions: § 1132(a)(1)(B), which gives participants and beneficiaries a cause of action to recover benefits due under the terms of an employee-benefits plan; and § 1132(a)(3), which in tandem with § 1104 gives participants and beneficiaries a cause of action for breach of fiduciary duty. The plaintiffs seek multiple forms of relief: a declaration that the practice of requiring chiropractic copayments violates section 632.87(3)(a) and voiding all copayment terms in the defendants' policies; damages for benefits due based on past illegal copayments paid; and equitable relief in the form of "a surcharge resulting from [d]efendants' breach of fiduciary duty and to prevent the [d]efendants' unjust enrichment."

---

[2] The policies have the following copayments for chiropractic visits: $60 (United Healthcare); $60 (Wisconsin Physicians Service); $50 (Humana); $30/$35 (Network Health Plan); $50 (Blue Cross Blue Shield).

The insurers separately moved to dismiss for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), together waging a broad-spectrum attack on the complaint. The defense motions had the following arguments in common: (1) section 632.87(3)(a) does not prohibit the practice of imposing copayments for chiropractic care; (2) insurance companies are not proper defendants in a benefits claim under § 1132(a)(1)(B); (3) the plaintiffs may not use § 1132(a)(1)(B) as a vehicle for reforming a plan or policy to comply with state law; (4) setting copayment requirements is not a fiduciary act; (5) if the conduct was fiduciary in nature, then charging copayments was prudent and breached no fiduciary duty; (6) the claims are barred by Wisconsin's "voluntary payment" doctrine; and (7) the plaintiffs failed to exhaust their administrative remedies.

The district court sensibly began with the second and fourth arguments, which address whether plan participants and beneficiaries can sue their insurance companies at all under § 1132(a)(1)(B) and § 1132(a)(3). The judge agreed with the insurers on both points. Regarding the claim for benefits due, the judge noted a long line of cases from this court holding that an ERISA claim for benefits due under an employee-benefit plan ordinarily should be brought against the plan. *See, e.g., Feinberg v. RM Acquisition, LLC,* 629 F.3d 671, 673 (7th Cir. 2011); *Leister v. Dovetail, Inc.,* 546 F.3d 875, 879 (7th Cir. 2008); *Mote v. Aetna Life Ins. Co.,* 502 F.3d 601, 610-11 (7th Cir. 2007); *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan,* 378 F.3d 669, 674 (7th Cir. 2004); *Jass v. Prudential Health*

*Care Plan, Inc.,* 88 F.3d 1482, 1490 (7th Cir. 1996). Relying on this authority, the judge held that the plaintiffs cannot sue the health insurers under § 1132(a)(1)(B). Regarding the claim for breach of fiduciary duty, the judge held that the insurers were not acting as fiduciaries when they set their policy terms, including the chiropractic copay requirements. These rulings disposed of the entire case, so the judge dismissed the complaint without addressing the defendants' alternative arguments. This appeal followed.

## II.  Discussion

ERISA "provides 'a panoply of remedial devices' for participants and beneficiaries of [employer-provided] benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108 (1989) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985)). This case focuses on two: the cause of action to recover and clarify plan benefits, *see* 29 U.S.C. § 1132(a)(1)(B), and the cause of action for breach of fiduciary duty, *see id.* § 1132(a)(3) (establishing the cause of action) & § 1104 (describing the content and scope of fiduciary duty). Although the plaintiffs seek multiple forms of relief—a declaration of rights, damages in the form of overpaid copays, and equitable relief—their complaint is structured around these two causes of action. Because the court dismissed the complaint for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), our

review is de novo, *McReynolds*, 694 F.3d at 879.[3]

## A. Section 1132(a)(1)(B) Claim for Benefits Due

Among other remedies, ERISA's civil-enforcement section provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (also known as ERISA § 502(a)(1)(B)). The district court held that the insurance companies could not be sued under § 1132(a)(1)(B), relying on a principle running through our caselaw that a claim for benefits due under an employee-benefits plan ordinarily should be brought against the plan itself. *See, e.g., Feinberg*, 629 F.3d at 673 ("The proper defendant in a suit for benefits under an ERISA plan is . . . normally the plan itself . . . ."); *Leister*, 546 F.3d at 879 (same); *Mote*, 502 F.3d at 610-11 (same); *Blickenstaff*, 378 F.3d at 674 (The "§ 502(a)(1)(B) claim for benefits . . . generally is limited to a suit against the Plan, not an employer . . . or the claims evaluator . . . .").

This is indeed the general rule. "The benefits are an obligation of the plan, so the plan is the logical and nor-mally the only proper defendant" in a claim for benefits

---

[3] The district court properly addressed the Rule 12(b)(6) motions ahead of class certification. *See McReynolds v. Merrill Lynch & Co, Inc.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012).

due under § 1132(a)(1)(B). *Leister*, 546 F.3d at 879. The qualifier "normally" is important, however. In many cases the plan will be the right (and only proper) defendant when a participant or beneficiary seeks benefits owed under the terms of the plan. But it does not follow from this general rule that an ERISA claim for benefits may *never* be brought against an insurer.

**1.  *Remedial scope of a benefits claim under § 1132(a)(1)(B)***

An ERISA § 502(a)(1)(B) claim is "essentially a contract remedy under the terms of the plan." *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 695 (7th Cir. 2010); *see also Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004); *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 381 (3d Cir. 2003) ("Claims for ERISA plan benefits under ERISA § 502(a)(1)(B) are contractual in nature."); *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 215 F.3d 516, 523 (5th Cir. 2000). The Supreme Court has explained that the remedy provided in § 1132(a)(1)(B) is designed "to protect contractually defined benefits," *Russell*, 473 U.S. at 148, and in keeping with its contract-law foundations, the cause of action offers typical contract forms of relief, including recovery of benefits accrued or otherwise due, declaratory judgments to clarify plan benefits, and injunctions against future denial of benefits, *id.* at 146-47. The claim is governed by a federal common law of contract keyed to the policies codified in ERISA. *Mathews v. Sears Pension Plan*, 144 F.3d 461, 465

(7th Cir. 1998) ("[T]he relevant principles of contract interpretation are not those of any particular state's contract law, but rather are a body of federal common law tailored to the policies of ERISA.").

The insurance companies argue that the phrase "benefits due . . . under the terms of the plan" means only those benefits specifically listed in plan documents and not benefits guaranteed under state law such as section 632.87(3). *See generally Kennedy v. Plan Admin. for DuPont Sav. & Invest. Plan*, 555 U.S. 285, 300-04 (2009) (explaining the "plan documents rule," under which plan administrators are required to follow plan documents). The district court sidestepped this argument, having concluded that the insurance companies cannot be sued at all under § 1132(a)(1)(B). We cannot bypass the point; it's a necessary predicate to our conclusion that the insurance companies are proper defendants on the plaintiffs' benefits claim.

An ERISA "plan" is an unwritten "scheme" or "set of rules" regarding the provision of employee benefits. *Pegram*, 530 U.S. at 223 ("Rules governing collection of premiums, definition of benefits, submission of claims, and resolution of disagreements over entitlement to services are the sorts of provisions that constitute a plan."). Once the plan is conceived, it must be "established and maintained pursuant to a written instrument" and "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1).

With insurance-based plans, however, "confusion is all too common in ERISA land; often the terms of an ERISA plan must be inferred from a series of documents[,] none clearly labeled as 'the plan.'" *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999); *see also Admin. Comm. of Wal–Mart Stores, Inc. v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007) ("[I]dentifying 'the plan' is not always a clear-cut task."). We sometimes equate the ERISA "plan" with the insurance policy. *See, e.g.*, *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 576 F.3d 444, 448 (7th Cir. 2009) (describing an insurance policy as "the original plan"). More commonly, however, we refer to an insurance policy as a "plan document" that *implements* the plan. *See, e.g.*, *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 991 (7th Cir. 2005); *Health Cost Controls*, 187 F.3d at 712.

The Supreme Court has held that when an ERISA plan includes an insurance policy, the requirements imposed by state insurance law become plan terms for purposes of a claim for benefits under § 1132(a)(1)(B). *See UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 375-76 (1999). In *Ward* the defendant insurer argued—just as the insurers do here—that only a written plan term can be enforced under § 1132(a)(1)(B). *Id.* at 375. The Supreme Court disagreed, relying on its ERISA preemption caselaw holding that "state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A)*." Id.* (citing *Metro. Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 758 (1985)). Section 1144(b)(2)(A) is an exception to ERISA's general preemption rule and provides that "nothing in this subchapter shall be construed to exempt or relieve any person from

any law of any State which regulates insurance." The Court flatly rejected the insurer's position, commenting that it "overlooks controlling [preemption] precedent and makes scant sense" and would leave the states "powerless to alter the terms of the insurance relationship in ERISA plans." *Id.* at 375-76. Under the insurance company's view of things, "insurers could displace any state regulation simply by inserting a contrary term in plan documents*." Id.* at 376. That result, the Court said, "would virtually 'rea[d] the saving clause out of ERISA.'" *Id.* (alteration in original) (quoting *Metro. Life*, 471 U.S. at 741).

To be sure, ERISA fiduciaries must act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). Moreover, nothing in § 1132(a)(1)(B) gives a court "the power to *change* the terms of the plan*." CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876 (2011). But the Court explained in *Amara* that it will sometimes be necessary to "look outside the plan's written language in deciding what those terms are, *i.e.*, what the language means*." Id.* at 1877. As an example the Court cited *Ward*, which "permitt[ed] the insurance terms of an ERISA-governed plan to be interpreted in light of state insurance rules*." Id.* (citing *Ward*, 526 U.S. at 377-79).

Accordingly, when an employee-benefits plan includes an insurance policy, contract terms mandated by state insurance law become plan terms. *See Ward*, 526 U.S. at 375-76. In effect, a plan administrator applying state insurance-law requirements "must be said to enforce

plan documents, not ignore them." *Kennedy*, 555 U.S. at 301. Accordingly, Wisconsin's equal-coverage mandate for chiropractic care, section 632.87(3), is a plan term and may be enforced in a claim under § 1132(a)(1)(B).

### 2. *Who may be sued under § 1132(a)(1)(B)?*

But may the plaintiffs bring their claim against the insurance companies, or is ERISA's benefits remedy limited to suits against the plan? We return to the statutory text, which creates a cause of action for "a participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The statute plainly spells out who may bring this claim—a plan "participant" or "beneficiary"—but it does not specify who may be sued. Nor does it limit "the universe of possible defendants"; indeed, it "makes no mention at all of which parties may be proper defendants." *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000) (addressing the related question of who may be sued under § 1132(a)(3)).

By necessary implication, however, a cause of action for "benefits due" must be brought against the party having the obligation to pay. In other words, the *obligor* is the proper defendant on an ERISA claim to recover plan benefits. *See Feinberg*, 629 F.3d at 673 ("The proper defendant in a suit for benefits under an ERISA plan is, in any event, normally the plan itself . . . because the plan

is the obligor."). Typically the plan owes the benefits and is the right defendant. *See Leister*, 546 F.3d at 879. But not always. Health plans are often structured around third-party payors. When an employee-benefits plan is implemented by insurance and the insurance company decides contractual eligibility and benefits questions and pays the claims, an action against the insurer for benefits due "is precisely the civil action authorized by § 1132(a)(1)(B)." *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc).

This conclusion fits with the common-law contract principles that guide the interpretation of § 1132(a)(1)(B). "Under settled principles of federal common law, a third party may have enforceable rights under a contract if the contract was made for his direct benefit." *Holbrook v. Pitt*, 643 F.2d 1261, 1270 (7th Cir. 1981). Here, the plaintiffs allege that they are insured under healthcare policies issued by the insurance companies under employee-benefits plans sponsored by their employers. They further allege that the insurers have both the authority to decide all eligibility and benefits questions *and* the obligation to pay the claims. Accepting these allegations as true, as we must at this juncture, the § 1132(a)(1)(B) claim rests on contract obligations running directly from the insurers to the plaintiffs. The insurance companies are the obligors and may be sued under ERISA for benefits due the plaintiffs.

It might be argued that suing an insurance company under § 1132(a)(1)(B) conflicts with a separate provision in ERISA's civil-enforcement scheme that makes

employee-benefit plans amenable to suit and limits the liability of plan administrators. Section 1132(d) provides as follows:

> (1) An employee benefit plan may sue or be sued under this subchapter as an entity. . . .
>
> (2) Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

29 U.S.C. § 1132(d). In *Leister* we observed that "[t]he first clause [of this subsection] just allows plans to sue or be sued, and the second clause just specifies consequences *if* the plan is sued; neither seems to be limiting the class of defendants who may be sued." 546 F.3d at 879. The main point of § 1132(d) is to adjust certain common-law liability rules; it's one example of the way in which ERISA departs from the common law of trusts.

The Supreme Court has recognized that much of ERISA is modeled on trust law (its fiduciary rules in particular), and common-law trust principles guide its interpretation. *See Firestone Tire,* 489 U.S. at 110. But the Court has also cautioned that "[i]n some instances, trust law will offer only a starting point, after which courts must go on to ask whether, or to what extent, the language of the statute, its structure, or its purposes require departing from common-law trust requirements." *Varity Corp. v. Howe,* 516 U.S. 489, 497 (1996). Section

1132(d) contains two important deviations from the common law of trusts.

At common law a trust cannot sue or be sued because it "is not a juristic person." *See Lazenby v. Codman*, 116 F.2d 607, 609 (2d Cir. 1940). ERISA departs from this rule by expressly providing in § 1132(d)(1) that "[a]n employee benefit plan may sue and be sued . . . as an entity." Another common-law rule is that "a trustee is personally liable on any contract made by the trustee, even if the trustee acted properly." RESTATEMENT (THIRD) OF TRUSTS ch. 21, intro. note (2007).[4] The modern trend in trust law is to insulate trustees from personal liability except for specific kinds of improper acts, *id.*, and ERISA adopts this modern view by providing that a money judgment against a plan "shall be enforceable only against the plan as an entity" and not against any other person "unless liability against such person is established in his individual capacity," 29 U.S.C. § 1132(d)(2).

By making the plan amenable to suit and limiting the personal liability of plan administrators, § 1132(d) overrides the common law of trusts and channels ERISA benefits claims into suits against the plan. But § 1132(d) does not categorically preclude suits against an insurance company or other obligor for benefits due. To the contrary, "[t]he 'unless' clause [in § 1132(d)(2)] neces-

---

[4] At common law a faultless trustee could be indemnified from the trust estate, but he was still jointly liable in his individual capacity for any money judgments against the trust estate. RESTATEMENT (THIRD) OF TRUSTS ch. 21, intro. note (2007).

sarily indicates that parties other than plans can be sued for money damages under other provisions of ERISA, such as § 1132(a)(1)(B), as long as that party's individual liability is established." *Cyr*, 642 F.3d at 1207.

We have on occasion allowed benefits claims to proceed against nonplan defendants based on uncertainties about the structure of the plan. In *Leister,* for example, we held that where "the plan has never been unambiguously identified as a distinct entity, . . . the plaintiff [may] name as defendant whatever entity or entities, individual or corporate, control the plan." 546 F.3d at 879; *see also Mein v. Carus Corp.*, 241 F.3d 581, 588 (7th Cir. 2001); *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549 (7th Cir. 1997). Uncertainty isn't an issue here; the complaint clearly alleges that the insurers have both the discretion to decide eligibility and benefits questions and the obligation to pay claims.

Of course a plaintiff may lack a valid legal theory to proceed against a nonplan defendant on a benefits claim. For example, we have affirmed the dismissal of a claim for benefits brought against an employee of the plan administrator. *See Jass*, 88 F.3d at 1490. Because the employee was sued in her individual capacity, we said she was "the wrong defendant," explaining that § 1132(d)(2) blocked the suit against an agent of the plan administrator absent some basis for liability in her individual capacity. *Id.* There was none, so we held that the complaint against the employee was properly dismissed. *Id.*

And in *Feinberg* we affirmed the dismissal of an ERISA benefits claim against the successor of the original plan

sponsor. 629 F.3d at 673-74. The successor company had purchased the assets of the plaintiff's former employer, which had sponsored his retirement plan. But the successor company had not assumed its predecessor's liabilities, including its retirement-plan obligations. The retiree (and other retirees in the same boat) sued the successor company but had no basis for holding the successor liable for the benefits, so we affirmed the dismissal of the claim—not because it was brought against the "wrong defendant," *see id.* (noting that the plaintiff had "no practical alternative to suing" the successor), but because the successor had no obligation to pay the benefits, *id.* at 674-75.

Before concluding on this point, we acknowledge that our decision in *Mote,* 502 F.3d at 610-11, appears to suggest a general rule against suing insurance companies under § 1132(a)(1)(B). A close reading of the case, however, clarifies that *Mote* cannot be read so broadly. There, the plaintiff sued her employer-based disability plan and the plan's administrator, the Aetna Life Insurance Company. *Id.* at 605. The district court dismissed Aetna as an improper defendant and entered summary judgment in favor of the plan, rejecting the plaintiff's claim on the merits. We affirmed the merits judgment, but we also said that the district court had correctly dismissed the insurer as an improper defendant, relying on the general rule that "in a suit for ERISA benefits, the plaintiff is 'limited to a suit against the Plan.'" *Id.* at 610 (quoting *Blickenstaff,* 378 F.3d at 674). We saw no reason in *Mote* to depart from this general rule because the lines between the

employer, the plan, and the insurer/administrator were not fuzzy: "Aetna was not Mote's employer and the Plan's policy distinguishes between the Plan, the employer, and Aetna." *Id.* at 611. But we did not address whether the disputed benefits in *Mote* were obligations of the plan itself (paid out of plan assets) or obligations of the insurance company (paid out of its assets). And because we affirmed the entry of summary judgment for the plan on the merits, the dismissal of the insurer made no real difference to the bottom line. *Mote* should be understood as an uncontroversial application of the general rule that an ERISA claim for benefits normally should be brought against the plan; we do not read it as support for a rule against suing insurance companies under § 1132(a)(1)(B).

To sum up, nothing in ERISA categorically precludes a suit against an insurance company for benefits due under § 1132(a)(1)(B). Although a claim for benefits ordinarily should be brought against the plan (because the plan normally owes the benefits), where the plaintiff alleges that she is a participant or beneficiary under an insurance-based ERISA plan and the insurance company decides all eligibility questions and owes the benefits, the insurer is a proper defendant in a suit for benefits due under § 1132(a)(1)(B). Our conclusion accords with that of the en banc Ninth Circuit, which has addressed this specific question, *see Cyr*, 642 F.3d at 1207, as well as the general approach adopted by other circuits in benefits claims against nonplan defendants, *see Lifecare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 843-45 (5th Cir. 2013) (collecting cases). It is

also consistent with the Supreme Court's conclusion in *Harris Trust* that nonplan defendants are subject to suit under § 1132(a)(3). *See* 530 U.S. at 254; *see also Cyr*, 642 F.3d at 1206 ("We see no reason to read a limitation into § 1132(a)(1)(B) that the Supreme Court did not perceive in § 1132(a)(3).").

## B.  Section 1132(a)(3) Claim for Breach of Fiduciary Duty

The district court also dismissed the claim under § 1132(a)(3) for breach of fiduciary duty because the conduct alleged in the complaint—imposing copayment requirements for chiropractic services—is not fiduciary in nature. This ruling was sound. "In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226.

ERISA carefully defines fiduciary status. "[N]ot only the persons named as fiduciaries by a benefit plan, *see* 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, *see id.* § 1002(21)(A), is an ERISA 'fiduciary.'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993). More specifically, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). ERISA

thus "defines 'fiduciary' not in terms of formal trustee-ship, but in *functional* terms of control and authority over the plan, *see id.*, thus expanding the universe of persons subject to fiduciary duties," *Mertens*, 508 U.S. at 262.

The Supreme Court has also explained that "a benefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan*." Aetna Health Inc. v. Davila*, 542 U.S. 200, 219 (2004). Therefore "the ultimate decisionmaker in a plan regarding an award of benefits" is a fiduciary and acts as a fiduciary "when determining a participant's or beneficiary's claim." *Id.* at 220; *see also CSA 401(K) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1140 (9th Cir. 1999) (fiduciary responsibilities include "the active interpretation of employee benefit plans, the management and disbursement of fund assets, the approval and rejection of claims, and the rendering of ultimate decisions regarding benefits eligibility"); *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 n.4 (11th Cir. 1998) ("Claims administrators are fiduciaries if they have the authority to make ultimate decisions regarding benefits eligibility."); *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1032 (6th Cir. 1993) (claims administrator was fiduciary because it "retained authority to resolve all disputes regarding coverage").

Applying these principles, we have held that an insurance company is a fiduciary under ERISA when it "agreed to exercise authority over the plan and was

granted the same discretionary authority as the original plan administrator." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 811-12 (7th Cir. 2006). When an insurer makes eligibility and benefits determinations under an ERISA plan, "it is plainly wearing its fiduciary hat, and the beneficiary may challenge the correctness of the decision according to the terms of the ERISA plan." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1291 (11th Cir. 2005). Here, the complaint alleges that each insurance company "administer[s] claims," "ma[kes] all benefit and policy decisions," and "pa[ys] all benefits" under the health plans sponsored by the plaintiffs' employers.

At the same time, however, ERISA's functional definition of "fiduciary" also means that an ERISA fiduciary does not always "wear the fiduciary hat." *Pegram*, 530 U.S. at 225. ERISA "does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." *Id.* at 225-26 (quoting 29 U.S.C. § 1002(21)(A)). Accordingly, the threshold inquiry in an ERISA claim for breach of fiduciary duty also requires the court to determine whether the defendant was "performing a fiduciary function[] when taking the action subject to complaint." *Id.* at 226.

The complaint's key factual allegations on this claim are as follows: (1) "each [d]efendant . . . *issued policies requiring illegal copayments for chiropractic services* and never exercised its authority, control, or responsibility *to eliminate these illegal copayments*"; (2) "[d]efendants knew,

or should have known, that . . . their failure to exercise their discretionary authority, control, and responsibility to *eliminate illegal copayments for chiropractic care*[] would reduce [p]laintiffs' and Class members' use of chiropractic care"; and (3) "[d]efendants also knew, or should have known, that . . . their failure to exercise their authority, control, or responsibility to *eliminate copayments for chiropractic care*[] would result in direct financial benefits to them at the expense of the [p]laintiffs and the Class." (Emphases added.)

Cutting through the surplusage, it's clear that these allegations do not attack the discretionary aspects of claims administration as such; the plaintiffs are not challenging individual eligibility and benefits determinations. Instead, the complaint targets decisionmaking about policy terms. The alleged fiduciary breach is the issuance of policies that require "illegal copayments for chiropractic care" and the failure to "eliminate" the illegal policy provisions. In short, this is a challenge to the *content* of the insurance policies; "decisions about the content of a plan are not themselves fiduciary acts." *Pegram*, 530 U.S. at 226. The fiduciary-duty claim fails at the threshold.

## C. Alternative Grounds for Affirmance

Our conclusion that the insurance companies are proper defendants on the benefits claim brings up the insurers' many alternative arguments to affirm, all of which were raised in the district court and are fully briefed here. *See Bogie v. Rosenberg*, 705 F.3d 603, 614 n.2

(7th Cir. 2013) (We may "affirm on any ground that the record supports and that appellee has not waived." (internal quotation marks omitted)). We address only one because it is dispositive. Section 632.87(3)(a) does not prohibit chiropractic copayments.

Recall that the state statute provides that no insurance "policy, plan or contract may exclude coverage for diagnosis and treatment of a condition or complaint by a licensed chiropractor . . . *if* the policy, plan or contract covers diagnosis and treatment of the condition or complaint by a licensed physician or osteopath." WIS. STAT. § 632.87(3)(a) (emphasis added). This language is clear. If an insurance policy covers treatment by a licensed physician or osteopath for a particular condition or complaint, then it cannot exclude treatment for the same condition or complaint by a licensed chiropractor acting within the scope of his license. The statute requires *equal treatment* of chiropractic services; it does not mandate a particular amount or level of coverage. More to the point, it does not expressly prohibit chiropractic copayments. The Wisconsin insurance code makes it clear that prohibitions do not arise by implication: "[W]hat chs. 600 to 655 do not prohibit is permitted unless contrary to other provisions of the law of this state." *Id.* § 600.01(1)(a). The plaintiffs have not identified any other provision of Wisconsin law prohibiting copayment requirements on chiropractic coverage.

The plaintiffs insist that chiropractic copayments are prohibited by negative implication from the language in section 632.87(3)(a) expressly stating that deductibles

and coinsurance are *not* prohibited. *See id.* § 632.87(3)(a)1. ("This paragraph does not . . . [p]rohibit the application of deductibles or coinsurance provisions to chiropractic and physician charges on an equal basis."). That is, the failure to mention copayments in this part of the statute means that copayments are prohibited by omission. This interpretation is foreclosed by the statutory rule against implied prohibitions: "[W]hat . . . [is] not prohibit[ed] is permitted . . . ." *Id.* § 600.01(1)(a).

The parties engage in extended debate about other evidence of statutory meaning. In particular, they disagree about the role of a separate statute regulating chiropractors, *see id.* § 446.02(10)(a) (permitting chiropractors to "waive all or a portion of an insured's patient's copayments, coinsurance, or deductibles"); an administrative rule, *see* WIS. ADMIN. CODE INS. § 8.77 (permitting health plans sold to small employers to impose an $11 copayment for chiropractic services); and certain agency directives in the form of "Fact Sheets" issued by the Office of the Commissioner of Insurance. We do not need to enter this debate. The statutory language is not ambiguous. Nothing in section 632.87(3)(a) prohibits chiropractic copayments.

In the alternative the plaintiffs argue that if the statute merely requires insurers to cover chiropractic treatments on equal terms as other healthcare services, then the complaint should be construed as stating a valid claim that the insurance companies are actually charging *unequal* copays for chiropractic care. This argument is new on appeal and is not supported by the al-

legations in the complaint, which are confined to the claim that Wisconsin law prohibits *all* chiropractic copayments. As we have explained, that claim fails as a legal matter. The alternative argument about unequal copays was raised for the first time on appeal and therefore comes too late. *See LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943 (7th Cir. 2010) (arguments raised for the first time on appeal are waived); *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010) ("A liberal reading of [the] complaint and argument in the district court yields no signs of the[] arguments [the plaintiff] is now presenting.").

AFFIRMED.