SARA DARROW, UNITED STATES DISTRICT JUDGE
This cause is before the Court on Defendant UMR, Inc.'s ("UMR") motion to dismiss, ECF No. 11. For the reasons that follow, Defendant's motion is GRANTED.
BACKGROUND[1]
Plaintiff Joanne Weeks alleges she has healthcare coverage through the Asarco LLC Medicare Supplement Health Benefit Plan ("Plan"), which is administered by UMR. Am. Compl. ¶ 8, ECF No. 10; Plan, Mem. Supp. Mot. Dismiss Ex. A, ECF No. 12-1.[2] UMR determines whether *947 the Plan covers the health-related claims Plan participants submit and also provides "information and advice concerning [Plan] coverage to interested parties that inquire about coverage via telephone and other communication mediums." Am. Compl. ¶¶ 9, 34.
In June and July of 2015, Plaintiff Marchele Mahnesmith, Weeks's daughter and healthcare power of attorney, repeatedly contacted UMR to determine whether the Plan covered in-home healthcare services for Weeks, who suffers from dementia, delirium, and arthritis. UMR's automated message advised her that she could not rely on information given during the phone call. Id. ¶ 17. Once Mahnesmith reached a UMR employee, she asked whether in-home healthcare services would be covered under Weeks's Plan. Id. ¶ 18. The UMR employee, who knew about the recorded message but who also knew that Mahnesmith would rely on the information provided anyway in order to plan for Weeks's medical needs, informed her that Weeks's Plan would cover in-home healthcare services. Id. ¶¶ 19-22, 35. UMR also told Preferred Home Health Care ("Preferred"), Mahnesmith's chosen provider, that Weeks's Plan covered one hundred percent of the cost of the in-home healthcare services Preferred contemplated providing for Weeks. Id. ¶ 26. In reliance on UMR's continued verbal approvals and assurances to herself and Preferred, Mahnesmith contracted with Preferred to provide in-home healthcare services to Weeks. Id. ¶¶ 27-28. Ultimately, UMR refused to provide full payment for Weeks's in-home healthcare services under the Plan, so Mahnesmith "was forced to hastily find alternative, more reasonably price[d] care for [Weeks] outside [Mahnesmith's] home." Id. ¶¶ 29-30. Weeks was moved to an assisted living facility and, as a result, suffered from additional health issues and severe emotional distress. Id. ¶ 32. Mahnesmith suffered severe emotional distress due to the rushed treatment change, Preferred's unpaid invoices, and seeing the decline in Weeks's health and mental wellbeing after she was moved to the assisted living facility. Id. ¶ 33. UMR intended Mahnesmith to rely on its erroneous statements, did not intend to be bound by them, and was aware of Weeks and Mahnesmith's vulnerability to financial injury and emotional distress in this context. Id. ¶¶ 35, 43.
On October 19, 2017, Plaintiffs filed a complaint in state court. UMR timely removed the action pursuant to 28 U.S.C. §§ 1331, 1332(a), 1441, and 1446. Not. Removal, ECF No. 1. On January 26, 2018, Plaintiffs filed an Amended Complaint alleging an Illinois Consumer Fraud Act ("ICFA") claim, 815 ILCS 505/1 - 505/12, Am. Compl. ¶¶ 46-55, and an intentional infliction of emotional distress ("IIED") claim, id. ¶¶ 56-64. On February 9, 2018, UMR filed a motion to dismiss, arguing that Plaintiffs' claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 - 1461. UMR further argues that Plaintiffs cannot state a claim against it for unpaid benefits under 29 U.S.C. § 1132(a) because, as a third party administrator, UMR is not liable for unpaid benefits and Plaintiffs failed to exhaust the Plan's administrative remedies before filing suit. Mot. Dismiss 1-2. The Court has diversity jurisdiction because the amount in controversy exceeds $ 75,000;[3] Plaintiffs are citizens *948 of Illinois, Am. Compl. ¶ 3, and UMR is a Delaware corporation with its principal place of business in Wisconsin, Not. Removal 2. See 28 U.S.C. § 1332(a).
DISCUSSION
I. Legal Standard
A. Motion to Dismiss
A court will dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Typically, a complaint does not have to anticipate an affirmative defense. Bausch v. Stryker Corp. , 630 F.3d 546, 561 (7th Cir. 2010). Nevertheless, courts may dismiss a complaint if its allegations establish the affirmative defense. See Collins v. Vill. of Palatine, Ill. , 875 F.3d 839, 842 (7th Cir. 2017) (upholding dismissal based on statute of limitations because the "complaint contain[ed] everything necessary to establish that the claim [wa]s untimely"); Gravitt v. Mentor Worldwide, LLC , 289 F.Supp.3d 877, 884 (N.D. Ill. 2018) (comparing permissibility of ruling on motions to dismiss based on preemption affirmative defense with motions based on statute of limitations defense).[4]
B. Preemption
There are two types of ERISA preemption. One is called complete preemption and is actually a jurisdictional analysis. If a plaintiff files a claim in state court that is essentially a claim for benefits under 29 U.S.C. § 1132 (also referred to as § 502), ERISA's civil enforcement mechanism, a defendant may remove that case to federal court. See Aetna Health Inc. v. Davila , 542 U.S. 200, 207-09, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) ; Metro. Life Ins. Co. v. Taylor , 481 U.S. 58, 65-67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (holding that complete preemption "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule," making it removable). The Court has diversity jurisdiction, so a complete preemption analysis is not required.
Defendant's motion to dismiss is based first on conflict preemption, which is an affirmative defense based on the Supremacy Clause of the Constitution that "operates to prevent the enforcement of state laws that conflict with federal laws or regulations." Fifth Third Bank ex rel. Tr. Officer v. CSX Corp. , 415 F.3d 741, 745 (7th Cir. 2005) (citing U.S. Const. art. VI, cl. 2 ). Whether a federal statute displaces a particular state cause of action depends on whether Congress intended such a result. Id. at 746 (stating the fundamental goal of a preemption analysis is to determine Congress's purpose). Congress's intent can be gleaned from "the explicit statutory language and the structure and purpose of the statute." Ingersoll-Rand Co. v. McClendon , 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).
[ERISA's] § 502(a) set[s] forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be *949 completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. "The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."
Pilot Life Ins. Co. v. Dedeaux , 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting Mass. Mut. Life Ins. Co. v. Russell , 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ).
In addition to the limited remedies available in § 1132(a), § 1144(a) (also referred to as § 514) states that ERISA "shall supersede any and all State laws insofar as they may ... relate to any employee benefit plan." This explicit preemption provision "is conspicuous for its breadth," FMC Corp. v. Holliday , 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), and "indicates Congress's intent to establish the regulation of employee welfare benefit plans as exclusively a federal concern[,]" Gobeille v. Liberty Mut. Ins. Co. , --- U.S. ----, 136 S.Ct. 936, 944, 194 L.Ed.2d 20 (2016) (quotation marks omitted). Accordingly, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive ... is ... [expressly] pre-empted" and subject to dismissal. Davila , 542 U.S. at 209, 124 S.Ct. 2488 (suggesting § 1144(a) draws its meaning in part from § 1132(a)'s comprehensive scheme). Conversely, any cause of action that could be brought under § 1132(a) may be amended to become an ERISA claim. "The difference in treatment stems from the fact that completely preempted claims 'fall within the scope' of ERISA's civil-enforcement regime and expressly preempted claims interfere with that regime." Loffredo v. Daimler AG , 500 F. App'x 491, 501 (6th Cir. 2012) (Moore, J., concurring) (citation omitted).
Since ERISA's enactment, courts have been struggling to identify claims that "relate to" ERISA-regulated employee benefit plans and are therefore preempted. Pilot Life Ins. , 481 U.S. at 44, 47-48, 107 S.Ct. 1549 (holding common law tortious breach of contract, breach of fiduciary duties, and fraud in the inducement claims preempted by § 1144 ).
[T]he Supreme Court has identified at least three instances where a state law can be said to have a "connection with" or "reference to" employee benefit plans, when it (1) "mandate[s] employee benefit structures or their administration;" (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA.
Trs. of AFTRA Health Fund v. Biondi , 303 F.3d 765, 775 (7th Cir. 2002) (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. , 514 U.S. 645, 658-60, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) ) (citations omitted) (second alteration in original); Davila , 542 U.S. at 214 n.4, 124 S.Ct. 2488 ("[A] state cause of action that provides an alternative remedy to those provided by the ERISA civil enforcement mechanism conflicts with Congress'[s] clear intent to make the ERISA mechanism exclusive."). Claims are also preempted if, when "stripped of their link to the pension plans, they would cease to exist." Christopher v. Mobil Oil Corp. , 950 F.2d 1209, 1220 (5th Cir. 1992) (dismissing on preemption grounds state law claims alleging that the employer amended *950 the retirement plan to fraudulently induce employees to surrender their jobs); see Ingersoll-Rand , 498 U.S. at 139-40, 111 S.Ct. 478 (preempting state wrongful discharge law because "the existence of a pension plan [wa]s a critical factor in establishing liability under" it). Even so, "[a] state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions." Biondi , 303 F.3d at 780.
II. Analysis
A. Preemption pursuant to § 1144(a)[5]
The Court must first assess whether the Plan is regulated by ERISA and, if so, whether Plaintiffs' claims "relate to" ERISA. ERISA defines an employee welfare benefit plan as a plan "established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries ... medical, surgical, or hospital care." 29 U.S.C. § 1002(1). ERISA "appl[ies] to any employee benefit plan" so defined. Id. § 1003(a). Weeks's Plan is regulated by ERISA. Plan 1 ("This Plan is intended to comply with and be governed by [ERISA] and its amendments."); 73-74 (providing statement of ERISA rights).
Plaintiffs allege two state law claims. The ICFA prohibits "unfair or deceptive acts or practices ... in the conduct of any trade or commerce." 815 ILCS 505/2. Such a claim requires:
(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act.
Phila. Indem. Ins. Co. v. Chi. Title Ins. Co. , 771 F.3d 391, 402 (7th Cir. 2014) (citing De Bouse v. Bayer AG , 235 Ill.2d 544, 337 Ill.Dec. 186, 922 N.E.2d 309, 313 (2009) ). To assert an IIED claim, a plaintiff must allege:
[f]irst, [that] the conduct involved [was] truly extreme and outrageous. Second, [that] the actor ... either intend[ed] that his conduct inflict severe emotional distress or kn[e]w that there [wa]s at least a high probability that his conduct w[ould] cause severe emotional distress. Third, [that] the conduct ... in fact cause[d] severe emotional distress.
Schweihs v. Chase Home Fin., LLC , 412 Ill.Dec. 882, 77 N.E.3d 50, 63 (2016).
Defendant argues Plaintiffs' claims relate to the ERISA Plan because they require an interpretation of the Plan and misrepresentation of benefits claims are foreclosed in the Seventh Circuit. Mem. Supp. Mot. Dismiss 7. In support, Defendant cites Plumb v. Fluid Pump Serv., Inc. , 124 F.3d 849 (7th Cir. 1997). In Plumb , the plaintiff's premium was not paid by his employer and his coverage lapsed. Id. at 852. When the plaintiff contacted the insurance company during this lapse, the company's representative assured the plaintiff that his current medical expenses would be covered under the plan. Id. at 856. The claims were ultimately denied and the plaintiff filed suit on an estoppel claim. Id. at 853. The court held *951 that the plaintiff could not maintain an estoppel claim because ERISA does not permit an oral modification of a written benefit plan. Id. at 856.
Defendant also cites Pohl v. Nat'l Benefits Consultants, Inc. , 956 F.2d 126 (7th Cir. 1992). In Pohl , the employer's representative told the plaintiffs that their medical expenses would be paid at eighty percent, when the plan actually limited payment to $ 10,000. Id. at 127. The plaintiffs sued for what the Seventh Circuit characterized as negligent misrepresentation, admitted they were not entitled to coverage at eighty percent but sought the damages they sustained as a result of being misled (they could have shopped for cheaper treatment). Id. at 127-28. The court upheld the denial of the claim because while the plaintiffs did not seek to expand coverage, "any money they obtained from this suit would be functionally a benefit to which the written terms of their plan [did] not entitle them." Id. at 128. The court held that "ERISA does not provide a substitute remedy[, which] reflects not a senseless gap in the statute[,]" but a decision consistent with "[o]ne of ERISA's purposes[--]to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written." Id.
Plaintiffs attempt to distinguish between a claim seeking coverage equal to that promised by a plan representative, which they seem to concede would be preempted, and a claim seeking damages caused by a deceptive or unfair act (UMR's misrepresentation), which they argue would not be preempted. Mem. Supp. Resp. Mot. Dismiss 5. This is a distinction without a difference because both claims require the existence of a plan and seek a benefit not owed by the Plan pursuant to state law claims rather than those available under § 1132(a)(1)(B). As described above, ERISA's purpose is to provide a civil enforcement scheme that is predictable, preserves plan assets for covered claims, and encourages employers to create benefit plans. 29 U.S.C. §§ 1001 - 1001b ; Conkright v. Frommert , 559 U.S. 506, 517, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010) ; Pohl , 956 F.2d at 128. Plaintiffs' claims interfere with those goals.
Plaintiffs argue this deceptive act occurred outside of any plan or plan administration, Mem. Supp. Resp. Mot. Dismiss 2, 3, 4, 7, and point to Biondi for support. In Biondi , the trustees of a plan sued a participant, who continued to list his former spouse on his medical plan for five years after the two divorced, for fraud to recover money paid to the ex-wife's medical providers. Biondi , 303 F.3d at 769. The court reviewed the Supreme Court's recent case law interpreting § 1144's vague "relate to" text and concluded that it had to "go beyond the unhelpful text ... and look ... to the objectives of the ERISA statute as a guide ...." Id. at 774 (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans , 514 U.S. at 656, 115 S.Ct. 1671 ). The court then held that the fraud claim was not preempted because the ERISA plan was "merely the context in which [the participant's] fraudulent conduct occurred[,]" id. at 779, and the court would not need to interpret or apply the plan's terms, id. at 780.
Plaintiffs argue their claims are similarly not preempted because even though Defendant's statements were made in the context of an ERISA Plan, they do not require the Court to interpret or apply the Plan's terms. Biondi is easily distinguished. In Biondi , the plan trustees sought to recover benefits fraudulently paid on behalf of a former beneficiary. Id. at 769. Such a claim does not conflict ERISA's purpose or available remedies. Here, a participant seeks to recover damages *952 in excess of the Plan's benefits because Defendant misstated the coverage available under the Plan. Even if Plaintiffs do not characterize their claim as one for benefits under the Plan, that is exactly what they seek-and then some, because they also want damages for how UMR treated them.
Plaintiffs rely principally on Metro. Life Ins. Co. v. Yitao Sun , No. 12 C 6036, 2013 WL 4759586 (N.D. Ill. Sept. 4, 2013). In Yitao Sun , decedent participated in his employer's ERISA-regulated life insurance plan. Id. at *1. Metlife, the issuing insurance company, gave decedent a form that purported to transfer his life insurance policy ("Policy 1") to a second policy ("Policy 2") when his employment was terminated. Id. at *1-2. He also completed a beneficiary designation form for Policy 2 leaving thirty-three percent of the proceeds to Sun, his wife. Id. at *2. Decedent paid Policy 2's premiums until he died. Id. Shortly thereafter, Metlife told Sun that Policy 1 had remained in effect; Policy 2 was void. Id. Since Sun was a named beneficiary only on Policy 2, Metlife would not pay her benefits under Policy 1. Id. Metlife filed an interpleader action and Sun filed common law fraud and ICFA counterclaims against Metlife. Id. at *1.
The court determined, by looking at the policies issued under the ERISA plan, that as long as Policy 1 was in effect, Policy 2 was void. Id. at *3, 5 (holding that "under the express and unambiguous terms of the plan documents" only "Policy 1 remained in effect"). Metlife argued Sun's ICFA and fraud claims should be preempted because they sought to utilize Illinois law as an alternative enforcement mechanism and required the court to interpret provisions of the ERISA plan. Id. at *10. The court determined that the claims would be preempted only if the ERISA plan was a critical element of the claims or the court would have to interpret the ERISA plan to adjudicate the claims. Id. The court concluded that the claims were not preempted. "MetLife led the Decedent and Sun to believe that ... Sun['s designation] as a beneficiary was proper, and after the Decedent died, informed Sun it was not ... Although the context of Sun's fraud claims involves an ERISA plan, Sun's allegations focus on conduct extrinsic to the plan." Id. (quotation marks omitted). The Court does not find this case persuasive. The court's conclusion that Metlife's conduct was deceptive and misleading first required an interpretation of policies issued under the ERISA plan before turning the "focus [to] conduct extrinsic to the plan," that is, Metlife's acting as if Policy 2 was still in force.[6] Id.
Plaintiffs' claims are similar. Plaintiffs imply Defendant falsely stated that in-home healthcare services were covered under the Plan. Am. Compl. ¶¶ 26, 29, 38.[7] Broadly construing Plaintiffs' Amended Complaint, see Fed. R. Civ. P. 8(e), Plaintiffs'
*953 ICFA claim relies on the Plan's existence and a determination that Defendant made a deceptive statement about its terms. Plaintiffs argue these acts occur outside of the Plan because they involve misstatements about it, but to agree with Plaintiffs, the Court would have to interpret the Plan's terms.
Plaintiffs' IIED claim depends on the alleged misinterpretation of the Plan's benefits. Such a determination also requires the Court to determine that UMR's statement about coverage conflicted with the Plan's terms. See Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc. , 657 F.3d 496, 504 (7th Cir. 2011) ("ERISA thus preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan ...." (alteration in original) ). If the Plan did not exist, Defendant's alleged coverage statements would have been inconsequential to Plaintiffs. See Harris v. JAT Trucking of Ill., Inc. , No. 07-2210, 2009 WL 2222740, at *8 (C.D. Ill. July 24, 2009) (holding that negligent infliction of emotional distress claim was preempted not because the court would have to interpret the benefit plan, but because the conduct was related to the provision of medical insurance, which "exacerbate[d] the level of emotional distress"). This claim is also an attempt to supplement the remedies provided in § 1132(a)(1)(B). See Rush Prudential HMO, Inc. v. Moran , 536 U.S. 355, 378-79, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002) (citing Pilot Life's rejection of a claim for emotional distress as an expansion of ERISA). Plaintiffs' claims relate to ERISA and are preempted by § 1144(a).
B. § 1132(a)(1)(B)
Because Weeks has coverage under the Plan, she could theoretically bring a claim for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). Defendant argues that even if Plaintiff could bring such a claim, she has sued the wrong entity and failed to exhaust her administrative remedies. Plaintiffs do not respond directly to these arguments, but instead assert that they "do not seek benefits under a plan and do not claim that any benefits are in fact owed under any ERISA plan." Mem. Supp. Resp. Mot. Dismiss 3.
Defendant is an independent third party administrator tasked with processing claims and other duties for the Plan administrator. Am. Compl. ¶¶ 9, 11; Plan 1. UMR "do[es] not assume liability for benefits payable under this Plan, since [it is] solely [a] claims-paying agent[ ] for the Plan administrator." Plan 1.[8]
"[A] cause of action for 'benefits due' must be brought against the party having the obligation to pay." Larson v. United Healthcare Ins. Co. , 723 F.3d 905, 913 (7th Cir. 2013). Generally, that means a participant or beneficiary will sue the plan "because the plan normally owes the benefits." Id. at 915. Here, Plaintiffs have sued the third party administrator that is responsible for processing claims and is not liable for Plan benefits. Plan 1. Therefore, even if the Court construed Weeks's claim as one for benefits under § 1132(a)(1)(B), it would be dismissed for failure to state a claim upon which relief *954 can be granted. See Fed. R. Civ. P. 12(b)(6).
CONCLUSION
Defendant's Motion to Dismiss, ECF No. 11, is GRANTED. Defendant's Motion for Leave to Reply, ECF No. 16, is GRANTED. The Clerk is directed to file the Reply, ECF No. 16-1, on the docket. The Clerk is directed to enter judgment as follows: IT IS ORDERED AND ADJUDGED that this case is dismissed without prejudice, and close the case.

On a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. Indep. Trust Corp. v. Stewart Info. Servs. Corp. , 665 F.3d 930, 934 (7th Cir. 2012). Accordingly, the material set forth here, unless otherwise noted, is based on allegations in the First Amended Complaint ("Amended Complaint"), ECF No. 10.

Plaintiffs argue the Court may not consider the Plan when evaluating Defendant's motion to dismiss because the Amended Complaint does not refer to the Plan document, allege benefits were owed under the Plan, allege that coverage was denied or granted, or allege that the Plan is central to Plaintiffs' claims. Mem. Supp. Resp. Mot. Dismiss 2, ECF No. 12. The Amended Complaint refers to Weeks's Plan eleven times; the Court may consider the Plan. See Williamson v. Curran , 714 F.3d 432, 436 (7th Cir. 2013) (explaining that, on a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice"); Hecker v. Deere & Co. , 556 F.3d 575, 582 (7th Cir. 2009) (permitting court to rely on documents referenced in the complaint and attached to motion to dismiss as fitting within the exception to Rule 12(d)'s general instruction).

Plaintiffs allege Preferred's invoices exceed $ 150,000.00. Am. Compl. ¶ 51.

While the Seventh Circuit has at times counseled against a defendant moving to dismiss under Rule 12(b)(6) rather than moving for judgment on the pleadings under Rule 12(c), Bausch , 630 F.3d at 561, Plaintiffs have not objected to Defendant's approach. "Rule 12(b)(6) and Rule 12(c) employ the same standard: the complaint must state a claim that is plausible on its face." St. John v. Cach, LLC , 822 F.3d 388, 389 (7th Cir. 2016) (quotation marks omitted).

Plaintiffs assert that an inquiry concerning eligibility and coverage under an ERISA plan is not subject to ERISA regulation. "If an individual asks a question concerning eligibility for coverage under a plan without making a claim for benefits, the eligibility determination is not governed by the claims procedure rules." Benefit Claims Procedure Regulation FAQs, Department of Labor, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/faqs/benefit-claims-procedure-regulation (last visited September 20, 2018). Plaintiffs do not explain how this interpretation of the ERISA regulations affects whether a state claim relates to an ERISA plan.

The court acknowledged that it resolved the preemption issue with only a two-paragraph response from Metlife. Yitao Sun , 2013 WL 4759586, at *11. This Court cannot help but wonder how a rigorous defense of preemption would have affected the court's decision.

Plaintiffs also allege UMR's practice of answering coverage questions without intending to be bound by them and knowing that Plaintiffs would rely on them is a deceptive act intended to inflict emotional distress. Am. Compl. ¶¶ 48, 49, 53, 62, 63. In response to the motion to dismiss, Plaintiffs claim, without further development, that Defendant's decision to "provid[e] any statement of coverage" is an unfair and/or deceptive act under the ICFA. Mem. Supp. Resp. Mot. Dismiss 6. To establish an ICFA claim, Plaintiffs must allege they relied on Defendant's deceptive act-"providing any statement of coverage" is not enough because it is not inherently unfair or deceptive. The Court finds these allegations do not advance Plaintiffs' cause.

Defendant also argues Plaintiffs have not exhausted the administrative remedies available to participants claiming ERISA benefits. A court may grant a motion to dismiss on the basis of exhaustion, an affirmative defense, if the complaint itself establishes it. See Collins , 875 F.3d at 842. The Amended Complaint does not establish exhaustion. If the Court construed Weeks's claim as one for § 1132(a)(1)(B) benefits, Defendant's motion to dismiss on this basis would be denied.